UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

EMILIA STRONG SYKES, *et al.*         :
                                       :    Case No. 3:06cv582-MHT
         Plaintiffs,                   :
                                       :    Judge Thompson
vs.                                    :
                                       :    Magistrate Judge Coody
BENJAMIN F. PAYTON, *et al.*          :
                                       :
         Defendants.                   :

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

I.   FACTUAL BACKGROUND

This action for equitable relief and damages is brought by Emilia Strong Sykes, a citizen of Ohio and student at Tuskegee University and her parents Barbara and Vernon Sykes, also citizens of Ohio. On April 20, 2006, Emilia Sykes was crowned by Defendants as Miss Tuskegee University. On June 12, 2006, notwithstanding Ms. Sykes' and her parents having been induced into action in reliance upon defendants representations and acts conferring the title of Miss Tuskegee University upon her, circumstances which estop Defendants from acting contrary to these representations, Defendants, revoked the title of Miss Tuskegee University from Emilia Sykes, all as set forth in the correspondence at Exhibit "A". By reason of defendants' representations, on which Emilia Sykes and her parents detrimentally relied, and acted in a definite and substantial manner as described more fully below, this action has been filed seeking an order that prohibits defendants from revoking Miss Sykes' Miss Tuskegee University title and damages for the legal and medical expenses that Miss Sykes has incurred.

On April 20, 2006, Defendant Payton, acted upon the results announced by judges in the Miss Tuskegee University pageant and personally crowned Ms. Sykes and conferred the title Miss Tuskegee University upon her, all as set forth in the affidavit and photos at Exhibit "B" which are incorporated herein.

Following the announcement of Emilia as the pageant winner, rumors began among certain students that the pageant results were in question. Purportedly one of the pageant judges had wrongfully penalized a contestant thereby reducing the contestants' score from first place to second place.

In an effort to determine whether there was any validity to the rumors concerning the pageants results, Plaintiffs traveled to Tuskegee. Plaintiffs met with Dean Spears to determine the contest status as fully explained in the affidavit at Exhibit "C". Dean Spears, represented unequivocally that the contest results were final and that there would be no review or investigation.

In reliance upon the representations of Defendants Payton and Spears, Plaintiffs, *inter alia*, did the following:

a) Changed the respective schedules to accommodate the conference and appearance schedule of Emilia as Miss Tuskegee University. For instance, Emilia, a McNair Scholar, decided not to attend certain academic activities by reason of the requirement to attend a conference for university pageant winners;

b) Plaintiffs modified their political campaign schedules and activities, i.e. appearances, fundraisers, etc. in order to accommodate Emilia's Miss Tuskegee University schedule;

c) Plaintiffs have appeared in news articles nationally and received accolades from numerous organizations based upon the representations of Defendants, that Emilia was Miss Tuskegee University;

d) Plaintiffs have expended funds to increase Emilia's wardrobe and related items to accommodate her role as Miss Tuskegee University;

e) Plaintiffs have made representations to third parties, based upon Defendants representation that Emilia was Miss Tuskegee University.

By reason of the extremely unfair and secretive manner in which Defendants have acted, Miss Sykes has experienced both physical and mental anguish. Miss Sykes is currently undergoing medical treatment and the future course of her treatment and the extent to which she will require future treatment is unclear.

## II.  PLAINTIFFS' CLAIMS

Plaintiffs have filed a three count complaint. Plaintiffs have filed two state law claims, one based on the doctrine of promissory estoppel and a tort claim for intentional infliction of emotional distress or wanton conduct. The third claim, a procedural due process claim, is being abandoned of this juncture in light of the holding in *O'Shea v. Tuskegee University, et al.* Case No. 3:03-CV-845, which followed the Eleventh Circuit's holding in *Focus on the Family v. Pinellas Suncoast Transit Auth.* 344 F.3d 1263 (11th 2003) that "to charge a private party with [s]tate action… the governmental body and private party [here Tuskegee] must be intertwined in a symbiotic relationship (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999)…[and]…the symbiotic relationship must involve the specific conduct of which the plaintiff complains." *Focus on the Family* 344 F.3d at 1278.

In this action Plaintiffs have based jurisdiction on both federal question and diversity grounds. Given the very limited information available at this juncture concerning the involvement, if any, of the State of Alabama in the Miss Tuskegee University pageant, no discovery having been undertaken on this issue, Plaintiffs hereby voluntarily dismiss, without prejudice, the procedural due process claim[1]. Accordingly, this memorandum will focus on the promissory estoppel and intentional infliction of emotional distress claims only.

### III. PRELIMINARY INJUNCTION STANDARD

A four-prong test for evaluating a request for a preliminary injunction has been established by the Eleventh Circuit, "Under this test, the party moving for a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the preliminary is not granted; (3) that the threatened injury to the movant outweighs the threatened harm that the injunction may cause the opposing party; and (4) that granting preliminary injunctive [*3] relief is not adverse to the public interest." *Digitel Corp. v. Deltacom, Inc., 953 F. Supp. 1486, 1495 (M.D. Ala. 1996) (citing Ferrero v. Associated Materials, Inc. 923 F.2d 1441, 1448 (11th Cir. 1991).*

---

[1] While Plaintiffs seek to dismiss their federal procedural due process claim, without prejudice, Plaintiffs still desire to proceed on due process grounds pursuant to the Court's ancillary or pendant jurisdiction over state claims. Alabama recognizes a state right to due process. In point of fact the Alabama Supreme Court has stated:

> "However, in the light of the provisions of section 13, of the Constitution of 1901, 'That all courts shall be open; that every person, for any *injury* done him, in his lands, good, *person*, or reputation, shall have a remedy by due process of law.'"

*J.D. Ivey v. Dixon Investment Company, et al.* 283 Ala. 590, 219 So.2d 639, 645 (1969). (Emphasis added.)

In the federal due process context, in order to demonstrate the existence of a property interest, a plaintiff "must have more than an abstract need or desire for it...[or] a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regent of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). Property interests are derived from "existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

Here Plaintiffs clearly have property interest to vindicate within the federal context, i.e. a scholarship, national recognition, travel opportunities, etc. However this property interest analysis is not applicable to a Alabama due process claim. Accordingly, Plaintiffs will not elaborate at this juncture.

4

*Frontier Bank v. R&C Trucking, Inc., et al.* 2005 U.S. Dist. LEXIS 34878, (E.D. Ala. 2005). Plaintiffs' evidence to be produced at hearing on July 31, 2006, satisfies this test. All evidence is not available to present at this juncture for the reason Defendants discovery responses are not due until July 24, 2006. Accordingly, Plaintiffs request the right to supplement this memorandum following the defendant's discovery responses.

a) **Likelihood of Success on the Merits**

Plaintiffs here are likely to succeed on the merits.

Plaintiffs have alleged two claims. The first is based on the doctrine of promissory estoppel.

> "*Promissory estoppel* is defined in *Bush v. Bush, 278 Ala. 244, 245, 177 So.2d 568, 578 (1964):*
>
> "A promise which the promisor should reasonable expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance <u>is binding if injustice can be avoided only be enforcement of the promise.</u>" Restatement of the Law [**17] of Contracts, §90, page 110."

*Thomas S. Ford v. Jackson Square Ltd and Housing Development Company, Inc.* 548 So.2d 1007, 1989 Ala LEXIS 455 (1989). (Emphasis added.)

Closely allied with this theory and also applicable here is the doctrine of equitable estoppel.

> "*Equitable estoppel* is
>
> "'…based [**16] upon the ground of public policy and good faith, and is interposed to prevent injustice and to guard against fraud by <u>denying to a person the right to repudiate his acts</u>, admissions, or representations, *when they have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence*. The doctrine of estoppel is far reaching in its effect, extending to real as well as personal [*1013] estate, and embracing almost every enterprise in which men may be engaged." (Italics supplied.)'

5

"*[First Nat. Bank of Opp v. Boles, 231 Ala. 473, 479, 165 So. 586, 592 (1936)]*, quoting 21 21 C.J. § 120 pp. 1117-18.

"<u>Except for the nature of the conduct on which the estoppel is based, the elements of equitable and promissory estoppel are essentially the same</u>.

"<u>This principle has long been recognized in Alabama jurisprudence</u>.  See *Johnson v. Blair, 132 Ala. 128, 31 So. 92 (1901)*.

"The basic elements of equitable estoppel are stated in Dobbs, Remedies § 2.3 (1973):

"An estoppel…has three important elements.  The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, wither by words, conduct or silence.  The other relies upon that communication.  And the other would be harmed materially if the actor is later permitted to assert any claims inconsistent with his earlier conduct.'

"A more detailed statement of the elements generally required to support an estoppel is given in 3 Pomeroy , Equity Jurisprudence § 805(5th ed. 1941):

"'…1.  There must be conduct - - acts, language, or silence - - amounting to a representation or a concealment of material facts. 2.  These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when [**18] such conduct was done, *and at the time when it was acted upon by him*. 4. the conduct must be done with the intention, or at least with the *expectation*, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon…5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it.  6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he much so act that he would suffer a loss if he were compelled to surrender or forgo or alter what he has done by reason of the firs party being permitted to repudiate his conduct and to asset rights inconsistent with it…' [Emphasis in *Mazer*.]

Id. Citing *Mazer v. Jackson Ins. Agency* 340 So.2d 770, 772 (Ala. 1976).

6

Here, Defendants Payton, Austin, Spear and Tuskegee all represented to Plaintiffs that Emilia Sykes had won the Miss Tuskegee University Title that this was final and there would be no appeal. Plaintiffs Emilia and Barbara Sykes participated in several subsequent conversations with Defendants or their agents, as set forth in the attached affidavits, and were informed unequivocally that the results announced on April 20, 2006 were final.. Plaintiffs relied upon these representations and detrimentally altered their positions by expending funds, changing their schedules, appearing in public forums, etc., only to have Defendants, roughly two months later repudiate their statements that the results were final. This course of events gives rise to a promissory estoppel claim.

> An express promise is not necessary to establish a promissory estoppel. <u>It is sufficient that there be promissory elements which would lull the promise into a false sense of security</u>. See Dobbs, supra.
>
> Both promissory and equitable estoppel require that the promise or representation of the party estopped be made with the intention, or <u>at least the reasonable expectation, that it will be acted on by the other party</u>…

*Mazer* at 774. (Emphasis added.) Here Defendants clearly lulled the Sykes' into a false sense of security.

The evidence here will show that Defendants reasonably expected that Plaintiffs would act upon the multiple representations from University officials that the April 20, 2006 results were final and that there was no provision for an appeal. On the basis of the doctrine of promissory estoppel alone Defendants should be prohibited from changing their decision on Emilia as Miss Tuskegee University. Alabama law clearly supports the Plaintiffs' promissory estoppel claim. Accordingly, Plaintiff's are likely to succeed on the merits.

Aside from promissory estoppel, Alabama also has followed the Restatement of Torts in relation to making outrageous or wanton conduct that produces severe emotional distress, actionable. It is outrageous for an institution of the stature and reputation of Tuskegee University to conduct its affairs in a manner as trifling and shabby as has been the case here.

Under Alabama law:

> "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected [**9] to endure it. Any recovery must be reasonable and justifiable under [*322] the circumstances, liability ensuing only when the conduct is extreme. Commend, Restatement [(Second) of Torts], supra, at 78 [(1948)]. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. *Commend (d), Restatement, supra at 72.*"

*Harrelson v. R.J.* 882 So.2d 317, 321 2003 Ala LEXIS 339 (2003).

Here we have one of the most venerated educational institutions in the United States, a virtual icon within the African American community. An institution that is the embodiment of the aspirations of a race for the social, educational and financial upward mobility of future generations. An institution that has been the focus at epic struggles for American ideals and equality. It is totally outrageous for an institution that occupies the status of Tuskegee University, to bestow the title Miss Tuskegee University, together with its substantial emoluments and prestige, upon a person of tender years such as Emilia, represent to her parents and her time and time again that this was final, and then unceremoniously in a very callous and impersonal manner send the letter at Exhibit A,

which acknowledges that Defendants realize their actions will cause emotional distress. Specifically, the June 12, 2006 correspondence states: "Tuskegee University regrets that this error was made. We regret, also <u>the anguish that this error has produced</u>…" <u>See</u>, Exhibit A.

The above admission by Defendants is an acknowledgement that their actions have produced anguish.

Other courses of action were available to Defendants. The decision to simply revoke the title from a person who had done nothing wrong after roughly two months of that person being publicized as Miss Tuskegee University is simply outrageous. The outrage has not only affected Miss Sykes, but also her parents. This is actionable under Alabama law. Alabama has adopted the Restatement of Torts 2d as it relates to outrageous or wanton conduct. I point of fact:

> § 46 Outrageous Conduct Causing Severe Emotional Distress
>
> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
>> (a) <u>to a member of such person's immediate family</u>, who is present at the time, whether or not such distress results in bodily harm, or
>>
>> (b) to any other person who is present at the time, if such distress results in bodily harm.

Here Plaintiffs have been subjected to severe emotional distress within the meaning of the Restatement, which provides in pertinent part:

9

*j. Severe emotional distress.* The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed. For example, the mere recital of the facts in Illustration 1 above goes far to prove that the claim is not fictitious.

The Restatement gives the following examples of the type or conduct that will support a claim:

Illustrations:

1. As a practical joke, A falsely tells B that her husband has been badly injured in an accident, and is in the hospital with both legs broken. B suffers severe emotional distress. A is subject to liability to B for her emotional distress. If it causes nervous shock and resulting illness, A is subject to liability to B for her illness.

2. A, the president of an association of rubbish collectors, summons B to a meeting of he association, and in the presence of an intimidating group of associates tells B that B has been collecting rubbish in territory which the association regards as exclusively allocated to one of its members. A demands that B pay over the proceeds of this rubbish collection, and tells B that if he does not do so the association will beat him up, destroy his truck, and put him out of business. B is badly frightened, and suffers severe emotional distress. A is subject to liability to B for his emotional distress, and it is result sin illness, A is also subject to liability to B for his illness.

3. A is invited to a swimming party at an excusive resort. B gives her a bathing suit which he knows will dissolve in water. It does dissolve while she is swimming, leaving her naked in the presence of men and women

10

whom she has just met. A suffers extreme embarrassment, shame, and humiliation. B is subject to liability to A for her emotional distress.

It has been embarrassing, humiliating and distressing for the Plaintiffs to have to inform people all over the United States that the title conferred upon Miss Sykes has been revoked. Defendants knew their actions would subject Plaintiffs to this anguish. Under the circumstances Defendants' actions here are no less outrageous than those cited in the above examples. Accordingly, Plaintiffs are likely to also prevail in their emotional distress claim.

### b) Irreparable Harm

Under Alabama law and the doctrine of promissory estoppel, irreparable harm is assumed, where as here all of the elements of promissory or equitable estoppel have been met. The Plaintiff is entitled to an equitable remedy. In this connection the Alabama Supreme Court has stated:

> The purpose of equitable and promissory estoppel "is to promote equity and justice in an individual case by preventing a party from asserting rights under a general technical rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience." See, also, *Smith v. Norman*, 495 So.2d 536 (Ala. 1986); and *Pinkston v. Hartley*, 511 So.2d 168 (Ala. 1987).

*Thomas S. Ford, supra at 1012.*

Where an estoppel is operative the remedy is to prohibit the person whose representations were relied upon from changing their course of action. Injustice is avoided by requiring the promisor to abide by his representation.

Aside from the equitable nature of promissory estoppel, here damages simply are not an adequate remedy. Dollars can not compensate for the pain, embarrassment, and

11

public humiliation the Plaintiffs have had to endure due to no fault of theirs. While a monetary recovery may be appropriate as reimbursement for out of pocket losses, damages will not provide adequate or complete relief.

Accordingly, Plaintiffs are faced with irreparable harm.

### c) Balance of Harms

The harm to Plaintiffs substantially outweighs the harm to defendants. Defendants made the errors here. Plaintiffs did nothing wrong. Nonetheless it is the Plaintiffs that are now being forced to endure the expense, inconvenience, anguish and embarrassment of defendants' mistakes. Defendants have acted in a secretive and arrogant fashion. They did not include Plaintiffs in their so-called "appeal process" but simply unilaterally by fiat divested Plaintiffs of substantial property interests. The balance of harms clearly favors Plaintiffs.

### d) Public Interest

The public interest is served by fairness and openness. Here Defendants in totally an arbitrary and ad hoc fashion have employed star chamber tactics to divest a citizen of property and status. This conduct is not only reprehensible, it is beneath the dignity of Tuskegee University. The public interest is served by requiring Tuskegee University to live up to its legacy.

## IV.   CONCLUSION

The facts that support Plaintiffs right to a preliminary injunction are still being discovered. Defendants discovery responses are due July 24, 2006. Plaintiffs request the right to supplement this memorandum as additional facts are learned. At this point however, it is clear Defendants have behaved arbitrarily, did not operate pursuant to

established rules or procedures, delayed corrective action for an inordinate period of time and acted in secret. On this basis and for reasons cited above, Plaintiffs are entitled to an order that compels defendant to restore Miss Sykes to the position of Miss Tuskegee University pending a final trial on the merits.

Respectfully submitted,

s/Percy Squire
Percy Squire, Esq.( 0022010)
Percy Squire Co., LLC
514 S. High Street
Columbus, Ohio 43215
614-224-6528 Telephone
614-224-6529 Facsimile
psquire@sp-lawfirm.com
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via email via the CM/ECF system to the party below, on the 19th day of July, 2006:

Ernestine S. Sapp
esapp@glsmgn.com

s/Percy Squire
Percy Squire, Esq.( 0022010)