IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| EMILIA STRONG SYKES, et al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CASE NO.: 3:06-CV-582 |
| | ) |
| vs. | ) |
| | ) |
| BENJAMIN F. PAYTON, | ) |
| PETER SPEARS, MINNIE R. AUSTIN, | ) |
| and TUSKEGEE UNIVERSITY, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION TO DISMISS AND MOTION TO STRIKE**

COME NOW the defendants, by and through their attorneys of record and supplement their brief previously filed. It appears from Plaintiffs' Complaint and Affidavits that they knew from the beginning that there was a cloud over who actually won the "Miss Tuskegee University" Pageant.

The Plaintiffs' Complaint is due to be dismissed for failure to factually allege any claim for which equitable relief may be granted. There does not appear to be a substantial likelihood of success on the merits on any claim. Additionally, the plaintiffs have a remedy at law.

**I. ADDITIONAL FACTS**

No activities have begun for "Miss Tuskegee University" since the pageant. The new "Miss Tuskegee University for 2006-2007" does not began her term or reign until

the fall semester of 2006. "Miss Tuskegee University" only represents the school in Tuskegee sanctioned activities. Tuskegee has not invited or required Plaintiff Emilia Strong Sykes to attend any events including the alleged conference for university pageant winners. Defendants know nothing about this.

After inquiries from Plaintiff Emilia Strong Sykes, she was told by Mrs. Austin that she could not wear her "Miss Tuskegee University" title sash on the campaign trail with her parents. Plaintiff Emilia Strong Sykes held the title exactly 1½ months (April 20, 2006 – June 12, 2006).

Recently Tuskegee was notified in writing that Plaintiff Emilia Strong Sykes has been suspended, among others, from Alpha Kappa Alpha Sorority for hazing violations committed earlier in the year.

A true and correct copy of Tuskegee's notification letter is attached as Exhibit "A"). As a result of Plaintiff Emilia Strong Sykes suspension from Alpha Kappa Alpha Sorority, based on Tuskegee University's Rules and Regulations, Plaintiff Emilia Strong Sykes could not serve as "Miss Tuskegee University" or as a member of the Court. Thus, all claims of the plaintiffs are moot. See attached as Exhibit "B", the Tuskegee University Handbook, Position Statement on Hazing, page 27; Definition of Hazing, page 32; Conduct Inappropriate for a Tuskegee University Student, page 33. See also Exhibit "C", "Miss Tuskegee University" Procedure Manual, Conduct, Pages 1 and 3. The exhibits are attached to the Affidavit of Peter Spears, which is filed in support of these additional facts.

## II. PRELIMINARY INJUNCTION MUST FAIL

A. **Promissory/Equitable Estoppel**

Promissory and/or Equitable Estoppel is primarily a <u>defensive</u> doctrine, and is only (if ever) the basics by which one can affirmatively seek an Injunction. See *Bowers v. Wal-Mart*, 827 So.2d 63, 67 n.2 (Ala. 2001)("Equitable estoppel is defined as 'a defensive doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way'"). See <u>Black's Law Dictionary</u>, 571 (7th ed. 1999).

The plaintiffs attempt to allege a claim of equitable estoppel. Although disputed, they allege that Dean Spears represented unequivocally that the contest results were final but the plaintiffs do not allege any misleading statement (by words or conduct) or anything approaching the particularity required by *Alabama Rules of Civil Procedure, Rule 9*. This claim is instead an attempt to turn Tuskegee's good faith effort to correct an honest error into something actionable by the plaintiffs.

Defendants agree that Alabama courts have adopted the language of *3 Pomeroy, Equity Jurisprudence, Section 805 (5th Ed. 1941)*, in setting out the requirements of equitable estoppel. *Beasley v. Conopco, Inc.*, 2003 WL 21729745, *8(M.D.Ala. 2003). To successfully maintain an action for equitable estoppel, the plaintiffs must prove:

(1) the party to be estopped misrepresented material facts;

(2) the party to be estopped was aware of the true facts;

(3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it;

3

(4) the party asserting the estoppel did not know, nor should it have known, the true facts; and

(5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

*Talledega City Board of Education v. Yancy, 682 So.2d 33, 36 (Ala. 1996).*

The plaintiffs' complaint fails to allege any affirmative misrepresentation of a material fact. Since the plaintiffs have not alleged that any affirmative misrepresentation was made to them, equitable and/or promissory estoppel is not available as a remedy.

The plaintiffs have not and cannot offer any case law holding a promissory or equitable estoppel claim based on a good faith effort to correct a scoring error, about which many knew of including the plaintiffs (See Complaint at Paragraph 12). Equitable estoppel is to be applied only with extreme caution or under exceptional circumstances *Allen v. Bennett, 823 So.2d 679, 685 (Ala. 2001).*

Plaintiffs are incorrect in asserting *Mazer v. Jackson Ins., Agency, 340 So.2d 770 (Ala. 1975)* applies here. *Mazer* is in no way analogous to the instant situation because *Mazer* contained an affirmative misrepresentation. *Mazer, supra,* involved a group of landowners filing suit against several developers after the developers breached a promise to the landowners to maintain a 100-foot buffer zone between an office park and the landowners' homes.

There is nothing at all "equitable" about the plaintiffs' actions to stop Tuskegee's efforts to correct an obvious error.

The Supreme Court of Alabama has repeatedly held that where a wrong can be compensated in money, an action at law affords an adequate remedy and a court of equity

4

is without jurisdiction.  See *Jarrett v. Hogedon, 185 So. 401 (Ala. 1938); City of Tuscaloosa v. Williams, 158 So. 733 (Ala. 1935); Hunt v. Jones, 845 So. 718 (Ala. 1919); McCullough v. Walker, 20 Ala. 389 (Ala. 1852).*

Similarly, when the damages in question concern injury to the person or property rights, the plaintiff must show the damage to be irreparable and unable to be calculated to warrant a decision in equity.  See *Gulf Compress  Co. v. Harris Cortner & Co.,48 So. 477 (Ala. 1908).*  The plaintiffs cannot meet this burden.  In fact, the plaintiffs' complaint is drafted with causes of action, which are traditionally accompanied with request for monetary damages.  However, in this case, they did not request the proper federal jurisdictional amount and their case is due to be dismissed.  But should they succeed in proving the defendants' misconduct proximately caused injury to them, an award of damages could be given to compensate their loss.  However, in *Ex Parte Jim Dandy Co., 239 So. 2d 545 (Ala.  1970)* equity cannot grant specific performance of a personal service contract and this remedy is not available at law.  Plaintiffs do not appear to have a substantial likelihood of success on the merits.

**B.** **Tort Claim Due to be Stricken**

Plaintiffs' Amended Complaint which added the tort claim for intentional infliction of emotional distress or wanton conduct and made changes to the jurisdictional amount is due to be stricken.  Among other things, the plaintiffs failed to seek leave-of-court to file their amended complaint.  See *Federal Rules of Civil Procedure, Rule 15*.  The Amended complaint is not allowed by law where a responsive pleading had been filed and the case placed on the trial calendar.

In order to recover on a tort of outrage, a plaintiff must establish: (1) the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from the defendants' conduct; (2) the defendants' conduct was extreme and outrageous; and (3) the defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it.  See *Portera v. Winn Dixie of Montgomery, Inc.*, 996 F. Supp. 1418, 1434 (M.D. Ala. 1998) (quoting *Jackson v. Alabama Power Co.*, 630 So.2d 439, 440 (Ala. 1993)).  The Alabama Supreme Court has defined outrageous conduct as "conduct so outrageous in character and so extreme in degree as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Wal-Mart Stores, Inc. v. Smitherman*, 872 So.2d 833, 840 (Ala. 2003).  However,

> **[M]ere insults, indignations, threats, annoyances, petty oppressions, or other trivialities [do not constitute outrageous conduct].  The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind.**

*Surrency v. Harbison*, 489 So.2d 1097, 1105-1106 (Ala. 1986).  As a result, the "tort of outrageous conduct only applies 'in the most egregious circumstances.'"  *Thomas v. BSE Industrial Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala. 1993).  In fact, the Alabama Supreme Court has only recognized a right of recovery under the tort of outrage in the following three circumstances:  "(1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious harassment."  *Stabler v. City of Mobile*, 844 So.2d 555, 560 (Ala. 2002).

6

Plaintiffs' outrage claim can't prevail because among other things, the actions did not constitute outrageous conduct and the conduct did not cause severe emotional distress that no reasonable person could be expected to endure.

Moreover, this Court lacks diversity jurisdiction because the required jurisdictional amount has not been exceeded. See *28 U.S.C. Section 1332.*

### III. CONCLUSION

For all the foregoing reasons in this supplemental brief and all other briefs previously filed, Defendants Tuskegee University, Benjamin Payton, Peter Spears, and Minnie Austin respectfully request that this Honorable Court enter an Order denying any and all injunctive relief, dismissing Plaintiffs' Complaint with prejudice and taxing all court costs against plaintiffs.

Respectfully submitted,

/s/ Ernestine S. Sapp
Ernestine S. Sapp – SAP 004

OF COUNSEL:
GRAY, LANGFORD, SAPP,
McGOWAN, GRAY & NATHANSON
P.O. Box 830239
Tuskegee, AL  36083-0239
Telephone:  (334) 727-4830
Fax:     (334) 727-5877
E-Mail:  esapp@glsmgn.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2006, I electronically filed the foregoing **Defendants' Supplemental Brief in Support of Motion to Dismiss and Motion to Strike** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Percy Squire, Esq.
psquire@sp-lawfirm.com

                                                Respectfully submitted,
                                                /s/Ernestine S. Sapp
                                                Ernestine S. Sapp – SAP 004

                                                E-Mail: esapp@glsmgn.com