IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
EMILIA STRONG SYKES,          )
et al.,                       )
                              )
     Plaintiffs,              )
                              )
     v.                       )   CIVIL ACTION NO.
                              )     3:06cv582-MHT
BENJAMIN F. PAYTON, etc.,     )        (WO)
et al.,                       )
                              )
     Defendants.              )
```

OPINION AND ORDER

This lawsuit, brought under state law by plaintiffs Emilia Strong Sykes, Barbara Sykes, and Vernon Sykes against defendants Tuskegee University and Tuskegee University administrators Benjamin F. Payton, Peter Spears, and Minnie R. Austin, concerns the results of a university beauty pageant. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

This case is currently before the court on the defendants' motion to dismiss. That motion will be granted in part and denied in part.

## I. MOTION-TO-DISMISS STANDARD

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). The complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Hishon</u>, 467 U.S. at 73.


## II. BACKGROUND

According to the plaintiffs' complaint, Emilia Sykes was crowned Miss Tuskegee University, but the results were called into question.  Although Emilia and her parents, Barbara and Vernon Sykes, were subsequently

2

assured in unequivocal terms by defendant Spears that the results would stand, an official inquiry was ultimately launched. The investigation revealed a scoring error in another entrant's score, that error was corrected, and the title of Miss Tuskegee University was taken from Emilia and bestowed upon the other entrant, whose corrected score was higher than Emilia's.

The plaintiffs then filed this lawsuit, in which they ask the court to prevent the university from taking the title of Miss Tuskegee University from Emilia. They subsequently amended their complaint to include claims for compensatory damages arising from mental and physical anguish and financial losses attributable to their belief that Emilia would be Miss Tuskegee University, namely Emilia's decision not to pursue a $ 2,600 stipend for the upcoming academic year, out-of-pocket expenses by the family to enhance Emilia's wardrobe in expectation of appearances she would make as Miss Tuskegee University, Emilia's decision not to remain on the cheerleading

squad, and Emilia's decision not to take advantage of a summer program that would have given her research experience and exposed her to other colleges.

## III. DISCUSSION

The plaintiffs advance two legal theories of liability.[1] First, they rely on the tort of intentional infliction of emotional distress, arguing that the defendants should be liable for any mental anguish suffered by the plaintiffs as a result of the defendants' decision to take the title from Emilia; this cause of action has been recognized as the tort of 'outrage' by Alabama courts.[2] Second, the plaintiffs invoke the doctrine of promissory estoppel to suggest that Tuskegee

---

1. The complaint also asserted a procedural-due-process claim, but the plaintiffs voluntarily abandoned that claim (Doc. No. 21). Accordingly, it is also due to be dismissed.

2. At a hearing held on July 31, 2006, plaintiffs' counsel acknowledged that the plaintiffs seek mental-anguish damages as to only their claim for intentional infliction of emotional distress.

4

University should be required to let Emilia retain the title of Miss Tuskegee University because the plaintiffs relied on defendant Spears's representations that the results of the pageant would stand and the plaintiffs suffered from such reliance.

## A. Outrage

In <u>American Road Service Co. v. Inmon</u>, 394 So. 2d 361, 365 (Ala. 1980), the Alabama Supreme Court first recognized the tort of outrage and set forth the following elements: (1) that the defendant's conduct was intentional or reckless; (2) that the conduct was extreme or outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it. In order to satisfy the second element, the conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly

intolerable in a civilized society." Id. (citing
Restatement (Second) of Torts § 46).

The tort of outrage is a "very limited cause of
action that is available only in the most egregious
circumstances." Thomas v. BSE Industrial Contractors,
Inc., 624 So. 2d 1041, 1044 (Ala. 1993). According to
the Alabama Supreme Court, it has found a jury question
on an outrage claim in only three categories of cases:
(1) cases having to do with wrongful conduct in the
context of family burials; (2) cases where insurance
agents employed heavy-handed, barbaric means in
attempting to coerce the insured into settling an
insurance claim; and (3) cases involving egregious sexual
harassment. Id. Thus, to recognize the tort of outrage
under the circumstances alleged in the complaint would
constitute a significant expansion of this "very limited
cause of action." Id.

In light of the foregoing, the court has no
difficulty concluding that on no set of facts could the

plaintiffs prove that the conduct of Tuskegee University or its employees was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," Inmon, 394 So. 2d at 365.  A university's decision to correct an error, even after telling a person that benefitted from the error that no such correction would be forthcoming, does not offend all bounds of decency and cannot be considered intolerable in a civilized society.

Although it certainly would have been better had no such error occurred and had the plaintiffs not been told unequivocally that the decision would not be reviewed, this court holds that such conduct does not rise to the level of outrage as defined under Alabama law. Accordingly, the plaintiffs' claim for outrage will be dismissed.

## B. Promissory Estoppel

### i.

Although the full contours of the doctrine of promissory estoppel are ill-defined and still developing as part of Alabama's common law, see 3 Corbin on Contracts § 8.12, Alabama clearly follows the definition of the doctrine set forth in the Restatement of Contracts: "A promise which the promisor should reasonably expect to induce action or forbearance of definite and substantial character and which does so is binding if injustice can be avoided only by enforcement thereof." Bush v. Bush, 177 So.2d 568, 570 (Ala. 1964) (quoting Restatement (First) of Contracts § 90). "[T]he gravamen of the claim of promissory estoppel [in Alabama] is detrimental reliance." Wyatt v. BellSouth, Inc., 18 F.Supp.2d 1324, 1326 (M.D. Ala. 1998) (Carroll, M.J.). Indeed, the court in Bush characterized promissory estoppel as a "doctrine of action in reliance." 177 So.2d at 570.

8

In Wyatt v. BellSouth, Inc., 757 So. 2d 403 (Ala. 2000), the Alabama Supreme Court for the first time considered the scope of damages available under promissory estoppel. There, the court held that courts may award such damages as justice requires to make the promisee whole relative to how he or she stood before the promisor made the promise, that is, that courts should award reliance damages in promissory-estoppel cases. Id. at 408. Alabama therefore appears to have completed the transition from using promissory estoppel as a substitute for consideration in a contract action to treating promissory estoppel as a claim independent of contract (a quasi-contractual action) to recover damages for detrimental reliance. See 3 Corbin on Contracts § 8.11.

Two principles guide Alabama courts when crafting remedies in promissory-estoppel cases. First, although "the full range of legal remedies[3] may be available,

_____

3. Legal remedies include all judicial remedies. Thus, damages, restitution, and specific performance are all "legal remedies." 11 Corbin on Contracts § 55.1.

9

promissory estoppel plaintiffs are not entitled to them as of right." <u>Wyatt</u>, 757 So.2d at 407 (footnote added). Instead, "[a] remedial order in a promissory estoppel case must be fashioned carefully to achieve fairness to all parties according to the circumstances of a particular case." <u>Id</u>. Put differently, "full-scale enforcement by normal contractual remedies [are] often appropriate for promises binding [under promissory estoppel], but relief may be limited." Restatement (Second) of Contracts § 90, cmt. d (cited favorably in <u>Wyatt</u>, 757 So.2d at 407).

Second and relatedly, recovery under promissory estoppel is limited to what could have been recovered had there in fact been a contract. <u>Wyatt</u>, 757 So.2d at 408 "The doctrine of promissory estoppel should not be used as a basis for awarding damages that would not, under general principles of contract law, be recoverable in an action for breach of contract. Otherwise, the plaintiff in an action founded on promissory estoppel would be in

a better position than if he had been entitled to recover in an action on a contract." Id.

Thus, traditional contract remedies form the outer limit of relief in a promissory-estoppel case, and, using those as a baseline, courts may then limit the remedies as justice requires.

ii.

For ease of analysis, the court will break the doctrine down into its component elements and consider each element in turn. To state a claim for promissory estoppel, a plaintiff must prove: (1) that the defendant made a promise (2) that the defendant should have reasonably expected to induce action or forbearance of definite and substantial character; (3) the promise did, in fact, induce action or forbearance; (4) and injustice can be avoided only by enforcing the promise. Bush, 177 So.2d at 570.

As to the first element, the complaint does not allege that the defendants promised that Emilia would retain her title, but rather that defendant Spears stated "unequivocally" that no investigation would be launched. However, "[a]n express promise is not necessary to establish a promissory estoppel. It is sufficient that there be promissory elements which would lull the promisee into a false sense of security." Mazer v. Jackson Ins. Agency, 340 So.2d 770, 774 (1976). The statements of defendant Spears, as set forth in the complaint, are sufficient to satisfy this element.

As to the second element, Corbin notes that "[a]ny reliance is evaluated objectively both for reasonableness and foreseeability. Customarily, that evaluation is done by the jury as fact issues based on all surrounding circumstances." 3 Corbin on Contracts § 8.11. This fact-based inquiry could be decided on a motion to dismiss or a motion for summary judgment. However, at this early stage, the court concludes that the plaintiffs

may be able to prove that it was both reasonable and foreseeable that they would rely on defendant Spears's assurances that the results would stand to their detriment.

In their complaint, the plaintiffs note that Emilia did not avail herself of a $ 2,600 stipend, did not participate in cheerleading, and did not take part in a summer program that would have given her valuable experience because she believed she would be Miss Tuskegee University.  Certainly, at this stage of the proceedings, without knowing more about the duties and benefits of Miss Tuskegee University, the court cannot conclude that such actions were unreasonable and unforeseeable.  Likewise, the court cannot say that spending money on new clothes for Emilia was unreasonable or unforeseeable; perhaps because of her responsibilities and public appearances such expenditures are commonplace.

On the third element, actual reliance, the plaintiffs have alleged that they took the actions outlined above in

13

reliance on defendant Spears's unequivocal representations. Thus, they have sufficiently pled this element of promissory estoppel.

Finally, the plaintiffs have alleged that injustice cannot be avoided without enforcing the promise. Indeed, the court can see no way for the plaintiffs to recover the money spent on Emilia's wardrobe or for Emilia to avail herself of the stipend, summer program, and cheerleading squad now that the deadlines have passed without some remedial action.[4]

Accordingly, the court concludes that the plaintiffs have stated a claim for promissory estoppel resulting in detrimental reliance. Therefore, the motion to dismiss will be denied as to the promissory-estoppel claim.

---

4. Obviously, litigation is not necessary to obtain a remedy. The court hopes the parties will pursue discussions to resolve this matter without further litigation.

iii.

Notwithstanding the court's conclusion that the plaintiffs have stated a claim for promissory estoppel, it does not necessarily follow that the plaintiffs are entitled to all the relief that they seek. The plaintiffs are seeking injunctive relief in addition to damages. Indeed, by asking this court to prevent Tuskegee University from taking the title of Miss Tuskegee University from Emilia, the plaintiffs are essentially seeking specific performance of the gratuitous promise made by defendant Spears.

This particular relief is problematic for several reasons. First, as a general matter, the presumptive remedy for a breach of contract is damages. See General Securities Corp. v. Welton, 135 So. 329, 330 (Ala. 1931) ("'Ordinarily the innocent party to a breached contract is entitled only to compensatory damages obtainable in an action at law.'") (quoting Lewman & Co. v. Ogden Bros., 42 So. 102 (Ala. 1904). A decree for specific

15

performance is appropriate only if "the character of the property be such that the loss [from the breach] will not be fairly compensated in damages, based upon an estimate of its market value." Id. Here, it appears that the loss suffered by the plaintiffs (that is, their reliance interest) can be measured in monetary damages.

Second, as noted, reliance damages are the preferred remedy for promissory estoppel. Wyatt, 757 So. 2d at 408.[5] The reluctance of Alabama courts to order specific performance based on promissory estoppel is consistent with the understanding of promissory estoppel as a "doctrine of action in reliance," Bush, 177 So.2d at 570, under which courts award such relief as justice requires to make the promisee whole relative to how he or she

---

5.    Indeed, this court has identified only one case where an Alabama court awarded injunctive relief based on promissory estoppel, and that case involved the use and enjoyment of private residences. Mazer v. Jackson Ins. Agency, 340 So. 2d at 771. (enjoining a developer that had promised not to develop a strip of forested land abutting a residential development in order to induce the residents to cease their opposition to a much larger development of nearby property from developing the strip).

stood before the promisor made the promise, <u>Wyatt</u>, 757
So. 2d at 408.    To award specific performance would
actually be to award the expectation interest, as opposed
to the reliance interest, since the plaintiff would
receive 'the benefit of the bargain' (even though there
was no bargain) instead of compensation for the losses
incurred in reliance on a promise that is later broken.

Third, in weighing whether to award specific
performance, the court must also ensure that the
consideration warrants such a remedy. <u>Welton</u>, 135 So. at
335.    In promissory-estoppel cases, there is no
consideration given by the promisee.    This factor,
therefore, weighs heavily against awarding specific
performance instead of some other form of relief such as
reliance damages.

Finally, the inquiry for specific performance
requires a balancing of the equities: "[In Alabama] the
specific performance of contracts will be decreed when,
under all the circumstances of that case, such action and

17

decree better subserve the ends of justice; and it will
be denied when, from a like view, it appears that it will
produce hardship or injustice to either of the parties."
Welton, 135 So. at 331.  Even at this early stage, the
court can begin to balance the equities.

To award specific performance, the court would have
to award the title of Miss Tuskegee University to Emilia
despite the fact that she scored lower than another
contestant; necessarily the court would have to take the
title away from that contestant who had the highest score
during the Miss Tuskegee University pageant.  Put
succinctly, in order to right the alleged wrong arising
from the broken promise, the plaintiffs, in seeking
specific performance of the promise, would have this
court wrong another person who had the highest score at
the Miss Tuskegee University contest.  The plaintiffs
contends that the school committed an error but
nonetheless promised them that it would not correct the
error.    The  defendants  argue  that,  despite  any

18

representation to the contrary, it had not choice but to correct the "clear error" in its pageant.

Both sides' positions share one thing in common: they acknowledge that only one person can be crowned Miss Tuskegee University and that someone else, either Emilia or the other contestant, must lose. Simply put, one person will be hurt, and one person will miss out on the opportunities and benefits attendant to the crown. Should it be the person that actually won, or should it be the person who was promised that, despite a scoring error, she would retain the crown? Both the defendants and the plaintiffs can invoke positive and negative arguments of fairness to answer this question.

Schools, including universities, exist to educate, and in winning and in losing people certainly learn about life, the world, and themselves. Perhaps, then, the question of who should prevail as Miss Tuskegee University is best left to the people who set up the pageant and made the rules governing it, that is the

university and its administrators.  In any event, such a question seems ill-fit for judicial resolution.

Nonetheless, Alabama case law makes clear that courts should consider "all the circumstances of [a] case" before ruling on an action for specific performance. Welton, 135 So. at 331.  Although the court has strong doubts that specific performance is warranted here, all the facts are not in and not all the circumstances are known at this early stage in the litigation.  Especially because this case will proceed forward on the question of reliance damages under the promissory-estoppel claim, the court concludes that it would be premature to dismiss outright the plaintiffs' request for specific performance.

## C. Subject-Matter Jurisdiction

The court notes that the question of whether the plaintiffs have met the amount-in-controversy requirement of diversity jurisdiction, 18 U.S.C. § 1332, has been

raised.   The court declines to reach this question at this juncture, particularly in light of the uncertain nature/status of the claims and without better articulation of the issues by the parties.  Of course, the question of jurisdiction can be raised at any time in the future, should further litigation of this matter prove necessary.

### IV. CONCLUSION

Consistent with the analysis above, it is ORDERED that the defendants' motion to dismiss (Doc. No. 8) is granted as to the plaintiffs' claim for outrage and denied as to the plaintiffs' claim for equitable estoppel.

Furthermore, based on the representations of plaintiffs that they have abandoned their due-process claim, it is ORDERED that the plaintiffs' claim arising

under procedural due process is dismissed without prejudice.

DONE, this the 1st day of August, 2006.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE